1816.
JUNE.

Williams
vs
Trustees, &c.

WILLIAMS's Lessee vs. THE TRUSTEES OF THE POOR, &c.

APPEAL from *Anne Arundel* County Court. Ejectment for *Williams's Purchase.* The defendants (the appellees) took defence for *Norwood's Beale,* on the plots made in the cause.

A tract of land called N. B. described in a grant to run E. and by S. 8 perches, to the head of D's creek, and running down with the said creek the following courses, N", &c. seven courses, "to a point at the mouth of a cove, thence N 39° E 26 perches, the point of another cove, thence with the said cove W N W 24 ps. thence N 26° W 34 ps. cross the cove to the beginning of a tract of land called G, it also being a bounder of 60 acres of land called D, and running with the said 60 acres by a line drawn N. and by W 30 ps. still bounding with the said land by a line drawn W 166 ps. then E N E 2:4 ps. to the head of N's cove, then with a straight line to the first tree"—Held, that there being only one location on the plots of D's creek, and the letter J being located by the defendant as the head of D's creek, and not counterlocated by the plaintiff, the E and by S 8 perches course to the head of D's creek, must terminate at the head of that creek, as located on the plots; that from the head of that creek the true location is, according to the grant, the following courses:— running down and with the creek N &c. seven courses, to a point at the mouth of a cove, the cove and point to be ascertained by the jury, thence as expressed in the grant N 39° E 26 ps. to the point of another cove, also to be ascertained by the jury, thence with the said cove W N W 24 ps. thence N 26° W 34 ps. across to the beginning tree of G, and a bounder of D. That if the beginning of G, and the bounder of D, cannot be proved, or if no such tracts can be proved, then the N 26° W 34 ps. course is to run across the said cove to the end of the said line, and then to run the several courses mentioned in the grant, without regarding the calls G and D. That it is the province of the jury to ascertain according to the proof, the points and coves called for, there being no particular designation contained in the grant of the coves, or of the points of the coves called for.

1. The plaintiff at the trial offered in evidence the patent of *Williams's Purchase,* the land mentioned in the declaration, granted to the lessor of the plaintiff on the 6th of May 1800, whereby it is described as lying "adjoining and between the tract of land called *Norwood's Beale,* and a creek called *Dorsey's* creek, beginning for the same at the edge of a cove leading out of the said creek, and at the end of 8 ps. on the N 25° E 12 ps. course of *Norwood's Beale,* (as corrected with an allowance of three degrees 45 minutes for variation,) the same being the 9th course of said land from where it calls to a marked locust post, it being a bounder of the land called *Sandgate,* and from thence running with said line, (as corrected with the said allowance for variation,) N 21° 15' E 4 ps. to the end thereof, still running with and bounding on said land as follows, to wit: S 73° 15' W 56 ps. N 35° 15' E 8 ps. N 71° 15' W 24 ps. thence N 74° E 144 ps. thence S 29° 45' E 34 ps. to the mouth of a cove that leads out of *Dorsey's* creek, from thence up and bounding on and with the meanders of the said creek, the several following courses and distances, to wit: S 30° 30' E 6 ps. S 25° W 5 ps. S 56° 45' W 10 ps. S 10° 45' W 10 ps. N 81° W 6 ps. to the mouth of a cove, then up and bounding on and with the meanders of said cove these several following courses and distances, to wit: N 57° 15' W 12 ps. S 83° 45' W 7 ps. S 88° 30' W 10 ps. N 46° W 10 ps. S 58° 15' W 3 ps. S 79° 30' W 8 ps. N 85° 45' W 14 ps. N 71° 45' W 10 ps. to the first beginning." And also proved that the same was truly located on the plots; and offered in evidence the plots and explanations by him made. He then gave in evidence the patent of *Norwood's Beale,* granted to *John Beale* on the 2d of May 1719, (being a resurvey on *Norwood,* granted to *John Norwood* the 8th of February 1658; *The Intacke,* granted to *John Norwood* the 18th of January 1659; *Norwood's Recovery,* granted to *Andrew Norwood* the 10th of June 1686; and *Proctor's Chance,* granted to *Robert Proctor* the 28th of June 1680; and also a certain tract of escheat land called *Gattenby,* granted to *Thomas Gates* the 7th of February 1658.) "Beginning at a young bounded locust, standing by Severn river, on the S side of the said river, and on the N side of a cove called *Norwood's* cove, at the mouth of the said cove, and bounding on the said river, lying up with the following courses, viz. N" &c. "to the mouth of *Norwood's* creek, thence bounding on the

1816.

Williams
vs
Trustees &c.

said creek and running therewith to the head thereof, by the several following courses, viz. S" &c. "to the head of a cove, then N" &c. "up the cove to a marked poplar, marked I H, for the governor, thence N" &c. "to the Rockey Neck Cove, then N," &c. &c. "across the cove, then N," &c. "to the spot where the original bounded pine of the land called *Norwood* stood, mentioned in the original certificate to stand at the head of the creek, then S," &c. "to a marked locust post, being a bounder of the land called *Sandgate*, thence E 36 ps. to a bounded white oak called *Todd's* oak, thence with *Todd's Range* S 74½° E 224 ps. to a stump on the S side of a branch, then running across the branch N 43° E 14 ps. then E & by S 8 ps. to the head of *Dorsey's* creek, and running down with the said creek the following courses, N 56° E 76 ps. then N 81° E 34 ps. then N 31° E 42 ps. then N 64° W 54 ps. then N 25° E 12 ps. then S 77° W 78 ps. then S 49° E 14 ps. to a point at the mouth of a cove, thence N 39° E 26 ps. to the point of another cove, thence with the said cove, W N W 24 ps. thence N 26° W 34 ps. cross the cove, to the beginning of the said tract of land called *Gattenby*, it also being a bounder of 60 acres of land called *Dorsey*, and running with the said 60 acres by a line drawn N and by W 30 ps. still bounding with the said land by a line drawn W 166 ps. then E N E 204 ps. to the head of *Norwood's* cove, then with a straight line to the first tree." And the plaintiff contended, that the said resurvey was truly located by him. The defendants then also offered in evidence the said patent of *Norwood's Beale*, and insisted that the same was truly located by them under the leave to add and amend, and the plots made out to September term 1812. They also offered in evidence, the patents of *Gattenby*, *Dorsey* and *Norwood*, viz. *Dorsey* surveyed 27th August 1668, and granted the 4th of September 1668, to *Edward Dorsey*, "lying on the S side of *Ann Arundel* river, and on a creek called *Dorsey's* creek, beginning at a bounded pine upon a point, and running up the said river for the length of 120 ps. to a cove called *Freeman's* cove, then up the said cove to the line of the land of Capt. *John Norwood*, then by the said *Norwood's* line S W for the length of 204 ps. to a bounded red oak in the said *Norwood's* line, then bounding on the line of a parcel of land formerly laid out for *Thomas Gates*, to the said creek, then bounding on the said creek to the first bounded tree, containing 60 acres," &c. *Gattenby*, granted to *Thomas Gates* on the 7th of February 1658, "lying on the W side of *Chesapeake* bay, and on the S side of a river in the said bay called *Severn* river, and on the N side of a creek in the said river called *Dorsey's* creek, beginning at a pine tree by the creek side, the said pine being the bound of 10 acres formerly laid out to the said *Gates*, running N and by W for breadth, by the clear ground side, 30 ps. and W 7 ps. to a marked oak, then running W for length 105 ps. unto the land lately laid out unto *John Norwood*, and W

1816.

Williams
vs
Trustees &c.

S W by the said land 85 ps. unto a marked oak, bounding, on the W by a line drawn S from the said oak 100 ps. to a marked oak by the head of a branch, on the S by a line drawn E from the said oak 45 ps. and E N E 35 ps. and E 70 ps. to a marked oak by the said creek, on the E by the said creek; on the N by the first W line and *Norwood's* land, containing and now laid out for 100⅚ acres," &c. *Norwood*, granted to *John Norwood* on the 8th of February 1658, "lying on the W side of *Chesapeake* bay, and on the S side of a river in the said bay called *Severn* river, beginning at a marked oak by a cove side called *Norwood's* cove, running N W up the river for breadth 150 ps. to a creek called *Norwood's* creek, bounding on the N by the said creek, running S W and by W for length 340 ps. to a marked pine by the creek side, on the W by a line drawn S and by E from the said pine 150 ps. to a marked oak; on the S by a line drawn N E and by E from the said oak 160 ps. and by a line drawn E from the end of the N E and by E line 16 ps. and by a line drawn E N E from the end of the E line unto the land formerly laid out unto *Nicholas Wyatt*, and by the said land unto *Norwood's* cove; on the E by the said cove and river, containing and now laid out for 230 acres," &c. And contended that the same were truly located by them on the plots in this cause. The plaintiff then prayed the opinion of the court to the jury, that he being admitted to have supported the title and location of his pretensions, is entitled to recover, unless the defendants by legal evidence can prove the true location of elder tracts, which take away the same; and that to justify the jury to gratify the calls in the elder certificate, by the defendants offered in evidence, proof must be given to satisfy the jury that the same are truly located on the plots. This direction the court [*Chase*, Ch. J. and *Ridgely*, A. J.] refused to give; but were of opinion, and so directed the jury, that there being only one location of *Dorsey's* creek, and the letter I being located by the defendants as the head of *Dorsey's* creek, and not counterlocated by the plaintiff, that the E and by S 8 perches course to the head of *Dorsey's* creek must terminate at the head of that creek located on the plots; that from the head of that creek the true location is according to the said certificate, the following courses—running down and with the said creek N 56° E 76 ps. then N 80° E 34 ps. then N 31° E 42 ps. then N 64° W 54 ps. then N 25° E 12 ps. then S 77° W 78 ps. then S 49° E 14 ps. to a point at the mouth of a cove, the said cove and point to be ascertained by the jury, thence as expressed in the said certificate N 39° E 26 ps. to the point of another cove, also to be ascertained by the jury, thence with the said cove W N W 24 ps. thence N 26° W 34 ps. across the cove, to the beginning of the tract of land called *Gattenby*, and a bounder of the land called *Dorsey*. And the court were also of opinion, that if the beginning of said tracts called *Gattenby*, and the bounder of *Dorsey*, cannot be proved, or if no such tracts can be proved, that the N 26° W 34 ps.

1816.

Williams
vs
Trustees, &c.

course is to run across the said cove, and to the end of the said line, and then to run the several courses mentioned in the certificate, without regarding the calls to the said tracts of land called *Gattenby* and *Dorsey.* The plaintiff excepted.

2. The plaintiff further prayed the opinion of the court to the jury, that if the jury do not from the evidence, find that the beginning of *Gattenby* is at black L, that then they are not at liberty to run the line of *Norwood's Beale,* which calls to run to the beginning of *Gattenby,* course and distance—The defendants having given no location on the plots in the cause to warrant such location. The court refused to give this direction, but were of opinion, that if the beginning of *Gattenby* and the bounder of *Dorsey* cannot be found, or if such tracts cannot be proved, that the W 34 ps. course is to run across the said cove, and to the end of the said line, and then to run the several courses mentioned in the certificate, without regarding the calls in *Gattenby* and *Dorsey.* The plaintiff excepted.

3. The plaintiff then prayed the opinion of the court to the jury, that as the letter W on the plots is located by the defendants on the point of the second cove called for, and no other location is given thereof, that the jury must find that to be the point to which they must go in running from a point at the mouth of a cove, N 39° E 26 ps. and from said point W they must run the next course. But the court refused to give this opinion, being of opinion, that it is the province of the jury to ascertain according to the proof the cove and the point of the cove called for, there being no particular designation contained in the certificate of the cove, or the point of the cove called for. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, EARLE, and MARTIN, J.

*Shaaff* and *Magruder,* for the Appellant. Three questions arise on the record—1. Is not the junior grant to stand unless there is proof that elder surveys include the land? 2. Can the defendants give a different termination than that called for in their locations on the plots? 3. Are they not bound by their location of a point if they do not counterlocate it?

1. The plaintiff's location is admitted to be correct, and his title is also admitted. To bar him an attempt is made to take away the land by locating other lands. If the defendants' locations are correct, then the plaintiff's land is swallowed up. *Norwood's Beale* is the subject of controversy, and if it is correctly located it takes away the plaintiff's land. That land is described to run "E and by S 8 ps. to the head of *Dorsey's* creek," &c. then, &c. "to the

1816.

Williams
vs
Trustees &c.

beginning of *Gattenby*," &c.   *Gattenby*, as located by the defendants, begins at L on the plots.   This is counterlocated by the plaintiff so as to put the defendants on the proof of their location.   Before the grant to the lessor of the plaintiff can be set aside, the defendants are bound to prove their locations.   Where there are calls in elder surveys there must be proof to show that the lands are truly located.   *Norwood's Beale* has calls, and before the defendants can locate that land to those calls, there must be proof of them.   The court below, however, directed the jury to run to those calls when there was no proof of such calls.

2. Suppose a location is made on the plots running to a certain point, and there is no other location given, shall the party claim a different location than that which he has made?   The defendants should have located as they expected to prove.   If they could not prove the call, then they should have located course and distance.   *Hammond et al. Lessee vs. Norris*, 2 *Harr. & Johns.* 148.   But the court below decided, that though the defendants claim to run to the call, yet the jury might run the course and distance, though not located or insisted on by the defendants.   This was giving the defendants quite a new defence, and different from what they claimed.   It is contended that the defendants were controled by their own location at W on the plots, in the same manner as the plaintiff was confined to his location at I.   The certificate could not designate it except by giving it a name.   The defendants having located the cove at W, and no other being made by them, they are bound by it.

*Stephen*, for the Appellees.   The defendants below took defence for *Norwood's Beale*.   There was no controversy in the location of the land until it came to the head of *Dorsey's* creek, which is located by both parties at the letter I on the plots; of course the head of *Dorsey's* creek is admitted to be at I.   The court below, in directing the jury to run "down and with the creek," had a right to do so, it being a matter of law for their decision.   But where the coves were situated, was matter of fact for the jury.   If there is but one location, yet it is competent for the jury to give less than is claimed, and otherwise than claimed and located.

THE COURT concurred in the opinions of the County Court as given in each of the bills of exceptions.

BUCHANAN, J. dissented from that given in the *first* bill of exceptions.

                    JUDGMENT AFFIRMED.